IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RAUL E. ZAPATA,

      Plaintiff,

   v.                                          No. Civ. 06-0981 JB/LCS

CITY OF ALBUQUERQUE,
RONALD TORRES, AND
CAPTAIN CANDELARIA,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

      **THIS MATTER** comes before the Court on Defendants' Martinez Report (Doc. 50), Supplemental Martinez Report (Doc. 52), and Motion for Summary Judgment (Doc. 57). Plaintiff, acting *pro se*, has brought this civil rights action under 42 U.S.C. § 1983.  In particular, Plaintiff alleges that, while incarcerated at Metropolitan Detention Center ("MDC"), he was (1) denied mail access, (2) denied medical treatment, (3) harassed and assaulted by Captain Candelaria, (4) denied access to the library for a reasonable amount of time, and to tables and chairs within the library of adequate size, and (5) denied soap, shampoo, toothpaste, toothbrushes, socks, boxers, t-shirts, proper food, access to exercise equipment, and a place to sleep other than the floor.  (Docs. 1, 48.)   Because there are no material issues of fact in dispute and Defendants are entitled to summary judgment as a matter of law, I recommend that judgment be entered in favor of Defendants and that this matter be **DISMISSED** with prejudice.

      Also before the Court are Plaintiff's Motion for Reconsideration (Doc. 51), Objections (Doc. 53), Motion for Hearing (Doc. 55), and Motion of Jurisdiction and Venue Change (Doc.

56).  Because summary judgment is appropriate, I recommend that these motions and objections

be **DENIED** as moot.

      **I.**     **PROCEDURAL HISTORY**

      On August 15, 2005, Plaintiff was charged with aggravated assault against a household

member.  *State v. Zapata*, D-202-CR-200504178 (N.M. 2d).  On September 15, 2005, an

indictment was filed by a grand jury, and Plaintiff was arrested.  *Id*.  After a jury trial, a verdict of

guilty was entered on June 5, 2007.  *Id*.

      Plaintiff filed this action under 42 U.S.C. § 1983 on October 10, 2006, claiming that,

while incarcerated at Metropolitan Detention Center ("MDC"), he had been (1) denied access to

his mail, (2) denied medical treatment, and (3) harassed and assaulted by Captain Candelaria.

(Doc. 1.)  The suit is one of <u>eight</u> brought by Plaintiff, acting *pro se*, in this Court.  *See* 06CV952

MCA/KBM; 06CV981 JB/LCS; 06CV1108 MCA/KBM; 06CV1177 JAP/RLP; 06CV1200

WJ/CG; 07CV130 WJ/RLP; 07CV518 BB/RHS; 07CV519 RB/WPL.

      Plaintiff's complaint originally named as Defendants (1) Captain Candelaria, (2) Ronald

Torres, Chief of Security for MDC, (3) MDC Medical Services, and (4) Martin Chavez, the

Mayor of Albuquerque.  (Doc. 1.)  On December 13, 2006, however, the Court dismissed the

claims against MDC Medical Services and Martin Chavez with prejudice, and substituted City for

MDC Medical Services as a named Defendant.  (Doc. 4.)

      Plaintiff subsequently submitted the following pleadings: a Supplement filed on

December 18, 2006 (Doc. 8), a Motion to Amend filed on March 13, 2007 (Doc. 13), a

Supplement filed on March 27, 2007 (Doc. 15), and a Motion for Order filed on May 30, 2007

(Doc. 16).   In the first Supplement, Plaintiff asked for a restraining order against all named

Defendants, attempted to add new Defendants, and attempted to increase the amount sought as relief. (Doc. 8.) In the Motion to Amend, Plaintiff again asked for a restraining order, again attempted to increase the amount sought as relief, and also requested that the Court consider a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (Doc. 13.) In the second Supplement, Plaintiff seems to have alleged conspiracy and tampering with evidence because the librarians at MDC were interfering with his litigation efforts. (Doc. 15.). In the Motion for Order, Plaintiff again asked for a restraining order against all Defendants and also requested declaratory relief. (Doc. 16.) The Court construed each as a motion to amend Plaintiff's complaint and, because Plaintiff had several cases filed with the Court already, denied them. (Doc. 18.)

Plaintiff also filed a Motion to Appoint Counsel on June 25, 2007 (Doc. 20), and another Motion to Amend on July 9, 2007 (Doc. 23). Both were denied by the Court. (Docs. 21, 24.)

Motions to Dismiss were filed by Defendant Torres on July 6, 2007 and by Defendant City on July 12, 2007. (Docs. 22, 25.) Both claimed that Plaintiff had failed to state a claim upon which relief can be granted. *Id.* The Court found otherwise and denied the motions. (Doc. 34.)

On July 27, 2007, Plaintiff filed a "Waiver of Reply" and an additional Motion to Amend, which both attempted to amend Plaintiff's complaint by adding new claims and defendants. (Docs. 26, 29) Then, on August 1, 2007, Plaintiff filed a Motion for Temporary Restraining Order, seeking immediate relief from the alleged conduct of various MDC employees, declaratory relief pursuant to 18 U.S.C. 2201, and to amend his complaint once again. (Doc. 27.) On August 7, Plaintiff filed his second Motion to Appoint Counsel. (Doc. 30.)

3

On September 25, 2007, the Court denied Plaintiff's request for a restraining order, declaratory relief, and counsel.  (Doc. 34.)  It also denied his attempts to amend his complaint because they had occurred without the Court's leave.  However, the Court also allowed Plaintiff until October 31, 2007 to file one amended complaint in accordance with FED. R. CIV. P. 15(a). *Id.*

Plaintiff failed to file before the October 31, 2007 deadline a short and plain statement consolidating "all of the Defendants Plaintiff wishes to name, as well as all claims Plaintiff has against these Defendants."  *Id.*  Instead, Plaintiff filed only a "Declaration" on October 17, 2007 that requested multiple things from the Court and seemed to mention two new claims.  (Doc. 37.) In accordance with its prior order, the Court denied this "Declaration" and ordered Defendants to submit a Martinez Report.  (Docs. 39, 40.)  On December 5, 2007, Plaintiff filed a motion for an extension of time to file an amended complaint, which the Court denied (Docs. 42, 43).

Defendants submitted a Martinez Report and Motion for Summary Judgment on December 14, 2007 (Doc. 46) and a corrected version of the same on December 20, 2007 (Doc. 50).  Meanwhile, on December 17, 2007, Plaintiff filed a motion asking the Court to reconsider its decision to deny his "Declaration."  (Doc. 47.)  The Court, noting that this was the only document submitted by Plaintiff after he had been granted leave to amend and before the deadline to do so, granted the motion in part.  (Doc. 48.)  The "Declaration" was allowed to supplement Plaintiff's complaint to the extent that it raised the following claims: (1) that Plaintiff lacked access to the library for a reasonable amount of time, and to tables and chairs within the library of adequate size; and (2) that Plaintiff was denied soap, shampoo, toothpaste, toothbrushes, socks, boxers, t-shirts, proper food, access to exercise equipment, and a place to sleep other than the

4

floor.  *Id*.  Defendants were given an opportunity to submit a supplemental Martinez Report, which they did on January 8, 2007.  (Doc. 52.)  On January 29, 2008, Defendants filed a Motion for Summary Judgment which incorporated and adopted by reference the arguments asserted in both Martinez Reports.  (Doc. 57.)

In response to the Martinez Report, Plaintiff filed two hundred and ninety four pages of single-spaced "Objections" on January 10, 2008.  (Doc. 53.)  This response  far exceeds the number of pages permitted by the local rules, which provide that "[a] response may not exceed 24 double-spaced pages."  D.N.M. LR-Civ 7.7.  I need not read beyond the first twenty-seven pages based on this rule, but, in this case, I will consider the first fifty-six pages.  *Id*.  Additionally, I remind Plaintiff that, even though he is proceeding *pro se*, he must follow the same rules of procedure that govern other litigants.  *See Green v. Dorrell*, 696 F.2d 915, 917 (10th Cir. 1992) .  In the future, the local rules will be strictly enforced.

Since submitting these objections, Plaintiff has also filed: a Motion for Reconsideration on December 20, 2007 (Doc. 51), Objections on January 10, 2008 (Doc. 53), a Motion for Hearing on January 22, 2008 (Doc. 55),[1] and a Motion of Jurisdiction and Venue Change on January 28, 2008 (Doc. 56).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[1]That same day, Plaintiff appears to have filed an identical ten page "Motion for Hearing" in two of his other cases. *See* 06CV1200 WJ/CG; 07CV130 WJ/RLP.

matter of law." FED. R. CIV. P. 56(c).  When applying this standard, the Court examines the record and reasonable inferences "in the light most favorable to the nonmoving party."  *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999) (citation omitted).

Generally, the Movant bears the initial burden of establishing that no genuine issue exists as to any material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The Movant's initial burden may be discharged by showing "there is an absence of evidence to support the non-moving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the Movant meets its burden, the burden shifts to the non-moving party to demonstrate that there is a genuine issue for trial on a material matter.  *See Simms*, 165 F.3d at 1326 (citation omitted).

Where a *pro se* plaintiff is a prisoner, a court authorized "Martinez Report" prepared by prison officials may be necessary to develop a record sufficient to determine whether the prisoner's allegations have any factual or legal basis.  *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).  The Court may treat the Martinez Report as an affidavit in support of a motion for summary judgment, but may not accept the factual findings of the report if the Plaintiff has presented conflicting evidence.  *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992). The plaintiff's complaint may also be treated as an affidavit if it is sworn under penalty of perjury and states facts based on personal knowledge.  *Hall*, 935 F.2d at 1111.  "A bona fide factual

dispute exists even when the plaintiff's factual allegations that conflict with the Martinez Report are less specific or well-documented than those contained in the report. *Id.*

## IV.    ANALYSIS

Plaintiff's allegations raise issues concerning: (1) mail access, (2) medical treatment, (3) excessive force, (4) law library access, and (5) conditions of confinement. (Docs.1, 48.)  Four of these claims are directed against Defendant City. *Id.*  The fifth, excessive force, is directed against Defendants Candelaria and Torres. *Id.*  I have reviewed the record and have construed Plaintiff's complaint liberally, and I find that Plaintiff has failed to meet his burden with respect to each of the claims.  Accordingly, summary judgment in favor of Defendants is appropriate.

### A.    Mail Access

In his complaint, Plaintiff alleges that he was denied "proper access to mail" and that "personal and legal mail to family and attorney were not being delivered as per U.S. Postal Rules." (Doc. 1 at 3.)  However, he fails to elaborate on these vague and conclusory accusations, and it appears from the Martinez Report that the alleged deprivation stems from an incident where Plaintiff was attempting to reuse manilla envelopes that had been sent to him by mailing them out without attaching new postage.  (Doc. 50, Ex. F.)  His efforts were discovered by Sgt. Mke Avila, who returned the mail to Plaintiff instead of sending it out. *Id.*

Construed as alleging interference with his access to courts, Plaintiff's claim fails for two reasons.  First, Plaintiff has failed to show or even allege that the deprivation caused him actual injury. *See Wardell v. Maggard*, 470 F.3d 954, 959 (10th Cir. 2006) ("A plaintiff must show that non-delivery of his legal mail resulted in actual injury by frustrating, impeding, or hindering his efforts to pursue a claim."); *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) (conclusory

allegations of injury will not suffice).  Second, even if Plaintiff had established actual injury, his

mail access claim would be barred by the Prison Litigation Reform Act (PLRA).  The PLRA

provides: "No action shall be brought with respect to prison conditions under 42 U.S.C. § 1983 . .

. by a prisoner confined in any jail, prison or correctional facility until such administrative

remedies as are available have been exhausted." 42 U.S.C. § 1997(e)(a).  Recently, the Supreme

Court clarified that failure to exhaust must be raised as an affirmative defense, *Jones v. Block*,

127 S. Ct. 910, 921-22 (2007), which Defendants have done in their Motion for Summary

Judgment.  (*See* Docs. 57, 50.)

      The record reflects that Plaintiff had ample access to an administrative remedy in the form

of MDC's grievance procedure.  (*See* Doc. 50, Ex. E.)  In fact, Plaintiff claims in his complaint

that, before instituting this suit, he had filed at least a hundred total.  (Doc. 1 at 5.)  Plaintiff does

not allege, however, that he raised the issue of mail access in any of the grievances the he filed,

and none of the grievances attached to Defendants' Martinez Reports mention it.  (*See* Doc. 50,

Ex. E 92-119; Doc. 52, Ex. D; Ex. E.)  Thus, this claim would be barred by the PLRA because

Plaintiff has failed to exhaust his administrative remedies with respect to it.

      **B.**    **Medical Treatment**

      Prison officials violate the Eighth Amendment when they are deliberately indifferent to

the serious medical needs of prisoners in their custody.  *Perkins v. Kansas Dep't of Corrections*,

165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976)).

Deliberate indifference has both an objective and a subjective component: (1) the medical need

must be sufficiently serious, and (2) a prison official have known that there was a substantial risk

of harm and disregarded that risk by failing to take reasonable measures to abate it.  *Mata v. Saiz*,

8

427 F.3d 745, 751-55 (10th Cir. 2005); *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006);

*see also Self v. Crum*, 439 F.3d 1227, 1230-31 (10th Cir. 2006).  A negligent failure to provide

medical care, even one constituting medical malpractice, does not give rise to a constitutional

violation.  *Gamble*, 429 U.S. at 105-06.  Moreover, a prisoner who merely disagrees with a

diagnosis or a prescribed course of treatment does not state a constitutional violation.  *Gamble*,

429 U.S. at 105-06.

        In the present case, it is unclear whether the objective component has been satisfied

because it is difficult to determine the exact event or events that have given rise to Plaintiff's

claim.  In his complaint, Plaintiff simply states that he was denied medical treatment and then

references certain attached grievances.  (Doc. 1 at 3.)  Those grievances, which can also be found

in the Martinez Report, suggest that Plaintiff's claim is based on a denial of certain pain

medication and help with his colostomy bag.  (*See* Doc. 50, Ex. B at 4, 6-7.)  Meanwhile, in his

objections, Plaintiff alleges that a physician at MDC told him that he will be "handicapped

forever" because of a hernia that he experienced presumably while in MDC custody.  (Doc. 53-2

at 5.)

        Regardless of whether Plaintiff's medical need was sufficiently serious, however, nothing

in the record suggests that any of Defendant City's employees ever disregarded a known risk to

him.  Quite the contrary, voluminous medical records establish that Plaintiff frequently visited the

medical center and was treated by its staff on each occasion.  (*See* Doc. 50, Ex. B; Ex. C.)

Likewise, Plaintiff's Inmate Grievance Forms suggest not that his medical needs were being

ignored, but that he was not receiving the treatment that he preferred.[2]  (*See, e.g.*, Doc. 50, Ex. B

at 4, 6-7; Ex. E at 92-93.)  Consequently, I find that Plaintiff has failed to meet his burden and

recommend that the motion for summary judgment be granted with respect to this claim.

C.      **Excessive Force**

**Captain Candelaria**

"A prison guard's use of force against an inmate is 'cruel and unusual' only if it involves

'the unnecessary and wanton infliction of pain.'"  *Sampley v. Ruettgers*, 704 F.2d 491, 495 (10th

Cir. 1983) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)); *see also Hudson v. McMillian*,

503 U.S. 1, 10 (1992).  To prevail under this standard, an inmate must establish that: (1) the

guard intended to harm the inmate; (2) the force used was more than appeared reasonably

necessary at the time to maintain or restore discipline; <u>and</u> (3) the attack caused either severe pain

or a lasting injury.  *Sampley*, 704 F.2d at 495.  "Not every push or shove, even if it may later

seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."

*Norton v. City of Marietta*, 432 F.3d 1145, 1156 (10th Cir. 2005) (quoting *DeSpain v. Uphoff*, 264

F.3d 965, 978 (10th Cir. 2001).

In his complaint, Plaintiff alleges that he was "physically assaulted" by Captain

Candelaria.  (Doc. 1 at 2.)  An Inmate Grievance Form filed by Plaintiff on February 9, 2006

_____

[2]For example, Plaintiff alleges that his colostomy bag was not changed often enough.  As
the medical staff's response to one of his grievances points out, however, a more frequent
changing was not medically necessary and could have even been harmful.  (Doc. 50, Ex. E at 92.)
Similarly, Plaintiff was not given the pain medication that he desired because his treating
physician believed that a combination of Ibuprofen and Tylenol was appropriate for his condition.
*Id*. at 93.

describes the incident.  (*See* Doc. 50, Ex. E at 101)  In this grievance, which seems primarily directed at the medical care that Plaintiff had been receiving, Plaintiff explains that Captain Candelaria slapped him while he was in the infirmary.  *Id*.  Later, in his objections, Plaintiff clarifies that the encounter consisted of "a beating not a slap," and that it actually occurred on January 10, 2006.  (Doc. 53 at 6.)  Defendant Candelaria does not recall ever using force against Plaintiff or ever being in the infirmary at the same time as him.  (Ex. H at ¶ 7, Doc. 50.)  Similarly, the record contains affidavits from five individuals who were working in the MDC medical unit on February 9, 2006 and do not recall seeing Defendant Candelaria interact with Plaintiff.  (*See* Doc. 50, Ex. A; Ex. I; Ex. J; Ex. K; Ex. L.)

     Because the record should be examined in the light most favorable to the nonmoving party, I must assume that some physical contact occurred in the infirmary between Defendant Candelaria and Plaintiff in January or February of 2006.[3]  *See Northington*, 973 F.2d at 1521.  That said, however, there is insufficient evidence to conclude that whatever contact occurred amounted to cruel and unusual punishment under the Eighth Amendment.  First, there is no evidence that Defendant Candelaria intended to harm Plaintiff, or that the force used was more than appeared reasonably necessary at the time to maintain or restore discipline.  Second, even if Plaintiff's vague and conclusory statements are read broadly so as to demonstrate intent and unreasonableness, nothing in the record suggests that he experienced severe pain or a lasting injury as a result of the contact.  Thus, Plaintiff has failed to meet his burden, and Defendant Candelaria is entitled to judgment as a matter of law.  *See Celotex,* 477 U.S. at 322 ("Rule 56(c)

_____

     [3]The exact date of the incident is immaterial to this analysis.

mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case.")

## Ronald Torres

Supervisory liability may exist under § 1983 when a supervisor personally directed, or had actual knowledge of and acquiesced in, a constitutional violation. *See Johnson v. Martin*, 195 F.3d 1208, 1219 (10th Cir. 1999); *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992).  In the present case, neither requirement of supervisor liability is met.  First, as described above, there is insufficient evidence to conclude that Defendant Candelaria used excessive force against Plaintiff.  Second, even if it assumed that excessive force was used, nothing in the record suggests that Defendant Torres personally directed, or had actual knowledge of and acquiesced in, that the use force.  Instead, Defendant Torres seems to be named as a party in this case simply because he was Defendant Candelaria's supervisor when the incident allegedly occurred.  Accordingly, summary judgment in favor of both defendants should be granted with regard to this claim.

### D.   Law Library Access

The constitutional right of access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing . . . adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 822 (1977).  An inmate may not successfully bring a denial of access claim, however, without establishing "relevant actual injury." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  To establish relevant actual injury, an inmate must "do more than make a mere conclusory allegation of need

for unspecified or unlimited material," and must also "articulate a need for the requested material with sufficient particularity." *Petrick v. Maynard*, 11 F.3d 991, 995-96 (10th Cir. 1993).

Here, Plaintiff has set forth only conclusory allegations of injury. For example, in his "Declaration," Plaintiff states only that his limited law library access has "set him back" and has "hurt" his eight pending law suits. (Doc. 37 at 5.) Similarly, in a grievance filed on August 30, 2007, Plaintiff claims that he "needs daily library access" because he is proceeding *pro se,* currently has eight cases, and plans to file another. (Doc. 52, Ex. D.) Because there is not evidence that indicates Defendant City hindered his efforts to pursue a legal claim, I find that summary judgment is appropriate with respect to this claim.

### E.       Conditions of Confinement

Plaintiff's "Declaration," which the Court allowed to supplement his complaint to the extent that it raised new claims, alleges that he was denied soap, shampoo, toothpaste, toothbrushes, socks, boxers, t-shirts, proper food, access to exercise equipment, and a place to sleep other than the floor. (Doc. 37 at 6.) In his objections, he clarifies that hygiene items were not completely denied but instead supplied every five or six months, and that in particular he was upset that the prison lacked rehabilitation equipment. (Doc. 53 at 13.) The Martinez Report confirms that prisoners are given a pre-determined amount of basic items to prevent hoarding and also that MDC lacks exercise equipment.[4] (Doc. 52, Ex. B at ¶¶ 4-5.) Additionally, it clarifies

---

[4]Instead, prisoners are allowed time to exercise outside. (Doc. 52, Ex. B at ¶ 4.) This much is confirmed even by Plaintiff in his objections. (*See* Doc. 53 at 13.)

that the "floor" on which Plaintiff was allegedly forced to sleep was actually a mattress raised twelve inches off the ground.[5]  (Doc. 52 at Ex. B at ¶ 6.)

  "To prevail on a 'conditions of confinement' claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is sufficiently serious to implicate constitutional protection, and (2) prison officials acted with deliberate indifference to inmate health or safety."  *Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004); *see also Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001) (first prong is objective and second is subjective). In order to satisfy the first prong of the test, a prisoner must show "that conditions were more than uncomfortable, and instead rose to the level of 'conditions posing a substantial risk of serious harm to inmate health or safety.'"  *Despain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)).  In order to satisfy the second, a prisoner must show that an official was aware of the risk and disregarded it.  *Despain*, 264 F.3d at 971.

  Here, Plaintiff's claim fails on both prongs.  First, the conditions that he challenges do not rise to the level of a constitutional violation.  *See, e.g.*, *Whitington v. Ortiz*, 472 F.3d 804, 808 (10th Cir. 2007) ("A deprivation of hygiene items without any corresponding injury would not state an Eighth Amendment violation."); *Perkins v. Kansas Dep't of Corrections*, 165 F.3d 803, 810 (10th Cir. 1999) (only a total denial of exercise over an extended period of time, such as thirty minutes in three months, constitutes cruel and unusual punishment).  The Eighth Amendment

---

  [5]It should be noted that Plaintiff has never explicitly stated that he was denied a place to sleep other than the floor.  His "Declaration" lists "on the floor" as one of his conditions, which the Court interpreted to mean that he was forced to sleep on the floor.  (*See* Doc. 37 at 6; Doc. 48.)  Thus, the Martinez Report's characterization does not necessarily contradict Plaintiff's, and it has not been corrected by Plaintiff in subsequent filings.

'does not mandate comfortable prisons,' and conditions imposed may be 'restrictive and even harsh.'" *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  Second, nothing in the record suggests that anyone at MDC knew of and disregarded a substantial risk to Plaintiff's health created by these conditions.  On the contrary, the evidence suggests that Defendant City was mindful conditions at MDC and acted in a manner that it felt was appropriate.[6]

Moreover, even if Plaintiff had satisfied his burden with regard to this test, this claim, much like his mail access claim, would be barred by the PLRA.  *See* discussion *supra* Part III.A. Defendants have raised the issue of exhaustion, and the evidence suggests that Plaintiff failed to raise this issue before now.  (*See* Doc. 52 at 7; Doc. 50, Ex. E 92-119; Doc. 52, Ex. D; Ex. E.) Moreover, Plaintiff does not allege otherwise.  Thus, this claim would also be barred because Plaintiff has failed to exhaust his administrative resources.  42 U.S.C. § 1997(e)(a).

## V.      RECOMMENDED DISPOSITION

In conclusion, I have examined the Martinez Reports (Docs. 50, 52) along with Defendants' Motion for Summary Judgment (Doc. 57) and have found that Plaintiff has failed to show that there is a genuine issue for trial.  *See* FED. R. CIV. P. 56(e) ("When a motion for summary judgment is made and supported as provide in this rule, an adverse party . . . must set forth specific facts showing that there is a genuine issue for trial."); *see also Celotex,* 477 U.S. at 322; *Sparks v. Foster*, 241 Fed. Appx. 467, 473-74 (10th Cir. 2007).  Accordingly, I recommend

---

[6]For example, Defendant City limited access to basic items because inmates' acquisition of excess amounts could result in trade for contraband or use in other illegal activities.  (Doc. 52 at Ex. B at ¶ 4.)  Likewise, even though MDC lacked exercise equipment, prisoners were provided with an opportunity to exercise outside instead.  *Id*. at ¶ 4.

**GRANTING** summary judgment in favor of Defendants and dismissing this case with prejudice. I further recommend **DENYING** as moot Plaintiff's Motion for Reconsideration (Doc. 51), Motion for Hearing (Doc. 55), and Motion of Jurisdiction and Venue Change (Doc. 56).  Within thirty days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and 12 recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102.  A party must file any objections within the thirty day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE